**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                            :
JERRY PAGE,                 :
                            :     Civil Action No. 03-2029 (DRD)
            Petitioner,     :
                            :
      v.                    :
                            :          OPINION
ROY L. HENDRICKS, et al.,   :
                            :
            Respondents.    :
_____
```

**APPEARANCES:**

> JERRY PAGE, Petitioner <u>Pro</u> <u>Se</u>
> SBI# 263825B - 251807
> New Jersey State Prison
> CN 861
> Trenton, New Jersey 08625
>
> SIMON LOUIS ROSENBACH, ESQ.
> Assistant Prosecutor
> Middlesex County Prosecutor's Office
> 25 Kirkpatrick Street, 3d Floor
> New Brunswick, New Jersey 08901
> Attorneys for Respondents

**DEBEVOISE, District Judge**

This matter is before the Court on petitioner Jerry Page's application for habeas corpus relief under 28 U.S.C. § 2254. For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.   BACKGROUND

Petitioner, Jerry Page ("Page"), is presently confined at the New Jersey State Prison in Trenton, New Jersey, serving an aggregate prison sentence of 35 years with a 17½-year parole disqualifier for his conviction on four counts of robbery.

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference under 28 U.S.C. § 2254(e)(1), will simply reproduce the New Jersey Appellate Division's factual recitation, as set forth on direct appeal:

> According to the testimony presented by the State, defendant robbed the same victim, Jack Schechter, at Schechter's store in Piscataway on three separate occasions:  December 17, 1991, February 18, 1992 and February 27, 1992.  On the first occasion, defendant robbed Schechter at gunpoint.  The second time, according to Schechter, defendant "had his hands in his pocket with a protruding appearance."  Defendant informed Schechter that he had a gun and forced him into the back room by pushing whatever was concealed in his jacket into Schechter's back.  On the third occasion, defendant kept one hand in his pocket as if he was holding a gun and he removed money from Schechter's wallet and checked his pants pockets.  Schechter felt an object, which he believed to be a gun, pointed into his back.
>
> Between the second and third robbery of Schechter, defendant robbed an auto parts store in South Plainfield.  Defendant ordered Pamela Johnson, an owner of the store, to give him the money from the register.  According to Johnson, defendant told her that he had a gun in his pocket.  He kept one hand on the counter and the other in his pocket, which gave it a bulging appearance.

(Superior Court of New Jersey, Appellate Division, per curiam Opinion, filed July 19, 1996).

2

Page was tried by jury in a trial before the Honorable Joseph E. Sadofski, J.S.C., on February 9, 10 and 11, 1993. He was convicted on four counts of first degree robbery, and one count of possession of a weapon for an unlawful purpose. Judge Sadofski sentenced Page on April 5, 1993 to an aggregate term of 35 years in prison with a 17½-year parole disqualifier. In December 1994, Page filed a Notice of Appeal from his conviction and sentence. On July 19, 1996, the Appellate Division affirmed the convictions, but vacated the concurrent sentence on the charge of  possession of a weapon for an unlawful purpose, merging the count with one of the robbery counts. The New Jersey Supreme Court denied Page's petition for certification on December 2, 1996.

In October 1997, Page filed a petition for post-conviction relief ("PCR") in state court. The Honorable Robert P. Figarotta, P.J. Cr., denied the PCR petition on July 2, 1998. Page appealed and the Appellate Division affirmed the denial on October 31, 2001. The New Jersey Supreme Court denied certification on April 25, 2002.

Page filed this federal habeas action on or about April 22, 2003.[1] On or about January 26, 2004, the respondents filed an

---

[1] The Court finds that petitioner "filed" his habeas petition on the date he handed it to prison officials to be mailed to the Court for filing. See Houston v. Lack, 487 U.S. 266, 276 (1988); Burns v. Morton, 134  F.3d 109, 113 (3d Cir. 1998)(incorporating the "mailbox rule" for habeas petitions

answer to the petition, in the form of a letter brief, with selected portions of the relevant state court record.  The Court notes that the trial transcripts and the transcripts from the state PCR proceeding (if any) were not provided by the State as required under Rule 5(c) of the Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Habeas Rules").

## II.  CLAIMS FOR HABEAS RELIEF

Page challenges his state court conviction and sentence on the following grounds:

Point I: The indictment was defective because it was based on the hearsay testimony of police officers.

Point II: The identification of petitioner was suggestive.

Point III: Prosecutorial misconduct.

Point IV: Tainted evidence was presented to the jury.

Point V: The trial court erred in refusing to sever counts 7, 8, and 9 of the indictment.

Point VI: Ineffective assistance of trial counsel.

---

submitted by inmates confined in an institution).  Because the Court does not know the exact date on which Page handed his petition to prison officials for mailing, it will use the date on which he signed his petition, April 22, 2003.  Because this date falls within the one-year limitations period for filing a federal habeas petition under 28 U.S.C. § 2244(d), the Court rejects the respondents' affirmative defense that the petition is time-barred.

Point VII: The trial court erred in denying the defense motion to have the video tape clarified by the State crime lab.

Point VIII: The trial court erred in allowing the video tape into evidence because it was allegedly tampered with by an uncertified video shop.

Point IX: The trial court abused its discretion by sentencing the defendant separately on count seven of the indictment.

Point X: Ineffective assistance of appellate counsel.

### III.   EXHAUSTION REQUIREMENT

It is well established that a state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ." 28 U.S.C. § 2254(b)(1); see also 28 U.S.C. §2254(c); Rose v. Lundy, 455 U.S. 509, 510 (1982); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).  A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of

the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal), cert. denied, 532 U.S. 919 (2001); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts establishing exhaustion. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition. Picard, 404 U.S. at 275.  Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same.  Id. at 277.

Here, the State asserts that many of the claims raised by Page in this federal habeas petition are unexhausted.  However, to the extent any of the claims were not exhausted in state court, this Court may opt to review such claims, and deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2).  Section

6

2254(b)(2) provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  In this case, respondents have addressed most of petitioner's claims on the merits.  Thus, for the reasons discussed below, the Court will deny this petition on the merits, pursuant to 28 U.S.C. § 2254(b)(2), because "it is perfectly clear that an applicant does not raise even a colorable federal claim."  Lambert, 134 F.3d at 514-15.

IV.   STANDARD GOVERNING REVIEW OF § 2254 CLAIMS

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Duarte v. Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Khalif is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122

7

S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(*citing* Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  Williams, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id.  Under the "unreasonable application" clause, a federal court may grant the

writ if "the state court identifies the correct governing legal
principle from [the Supreme] Court's decisions but unreasonably
applies that principle to the facts of [the petitioner's] case."
Id. at 413.  Habeas relief may not be granted under the
"unreasonable application" condition unless a state court's
application of clearly established federal law was objectively
unreasonable; an incorrect application of federal law alone is
not sufficient to warrant habeas relief.  Id. at 411.  See also
Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied,
532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171
F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v.
Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that §
2254(d)(1) requires a federal habeas court to make a two step
inquiry of the petitioner's claims.  First, the court must
examine the claims under the "contrary to" provision, identify
the applicable Supreme Court precedent and determine whether it
resolves petitioner's claims.  See Werts, 228 F.3d at 196-97;
Matteo, 171 F.3d at 888-891.  If the federal court determines
that the state court's decision was not "contrary to" applicable
Supreme Court precedent, then the court takes the second step of
the analysis under § 2254(d)(1), which is whether the state court
unreasonably applied the Supreme Court precedent in reaching its
decision.  Werts, 228 F.3d at 197.

9

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  Id.  AEDPA prohibits such de novo review.  Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  Id.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

V.  ANALYSIS

A.  Defective Indictment on Hearsay Testimony

Page's first claim asserts that the indictment was defective because it was based on the hearsay testimony of police officers rather than the victims or witnesses themselves.

There is no federal constitutional right to a grand jury in state criminal proceedings, thus defects in a state grand jury process are not reviewable via a federal habeas petition unless they "rise for some other reason to the level of a denial of rights protected by the United States Constitution." Wainwright v. Goode, 464 U.S. 78, 86 (1983); see also Jelinek v. Costello, 247 F. Supp.2d 212, 278 (E.D.N.Y. 2003)("On its face, a state prisoner's claim that he was denied the procedural right to be indicted by a grand jury appears to implicate a right that is exclusively of state concern").  Page has been unable to show how the alleged defect in the grand jury proceedings, that is, the hearsay testimony of police officers concerning their investigation of the robberies deprived him of his constitutional rights.  Indeed, "[a] grand jury may return an indictment based largely or wholly on hearsay testimony." State v. Vasky, 218 N.J. Super. 487, 491 (App. Div. 1987).

Moreover, a claim as to the validity of a state indictment, as opposed to the fairness of a trial, does not typically rise to the level of a constitutional deprivation because any such claims

alleging error in a state grand jury proceeding are rendered harmless by the subsequent guilty verdict by a petit jury.  See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989).  See also United States v. Mechanik, 475 U.S. 66, 72-73 (1986); United States v. Eniqwe, 17 F. Supp.2d 390, 393 (E.D. Pa. 1998), aff'd, 248 F.3d 1131 (3d Cir. 2000), cert. denied, 531 U.S. 1185 (2001).  Therefore, the petit jury's eventual conviction of Page renders harmless Page's unsupported claim of irregularities in the grand jury proceedings.  Indeed, the victims of the robberies testified at trial.  Accordingly, this claim for habeas relief will be denied.

B.  The Identification of Petitioner was Suggestive

Page next asserts that his show-up identification by Schechter was unnecessarily suggestive because it occurred while he was in handcuffs in the rear of a police car with numerous police officers and cars present at the scene.  Page also argues that the photo identification by the victim Johnson was suggestive.  In support of this claim, Page alleges that Johnson initially did not identify Page from the composite sketch provided by the Piscataway police.

1.  *The Photo Identification*

While the Sixth Amendment does not require that defense counsel be present when a witness views police or prosecution photographic arrays, see United States v. Ash, 413 U.S. 300

(1973), an accused nevertheless is entitled to due process protection against the introduction of evidence of, or tainted by, unreliable identifications elicited through an unnecessarily suggestive photographic array, id. at 320; Manson v. Brathwaite, 432 U.S. 98, 110-17 (1977); Simmons v. United States, 390 U.S. 377 (1968) (due process prohibits in-court identification if pre-trial identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification").

The Supreme Court has recognized that "improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." Simmons, 390 U.S. at 383. The Court has identified certain procedures that heighten the risk of misidentification, including such practices as displaying the photo of only a single individual who generally resembles the person the witness saw, showing the witness photos of several persons among which the photograph of a single individual recurs or is in some way emphasized, or indicating to the witness that police have other evidence that one of the persons pictured committed the crime. Id. Despite the risk of misidentification, the Supreme Court has not prohibited the employment of photographic identification methods, either in the exercise of its supervisory power or as a matter of constitutional requirement. Id. Instead, the Court has required that each case

must be considered on its own facts and must be evaluated in light of the totality of surrounding circumstances; also, the Court has noted that the risk of conviction based on photo misidentification "may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error."  Id.

Where there has been an unnecessarily suggestive pre-trial photographic identification of a suspect,

> reliability is the linchpin in determining the admissibility of identification testimony ... .  The factors to be considered ... include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.  Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

Manson v. Brathwaite, 432 U.S. at 114 (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)).  "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Simmons, 390 U.S. at 383.  See also Stovall v. Denno, 388 U.S. 293, 302 (1967), overruled on other grounds, Griffith v. Kentucky, 479 U.S. 314 (1987).

14

Where a trial court has failed to exclude identification evidence obtained in violation of a defendant's due process or Sixth Amendment rights, the habeas court must determine whether the failure to exclude that evidence was harmless constitutional error under <u>Chapman v. California</u>, 386 U.S. 18 (1967).  <u>See</u> <u>Moore v. Illinois</u>, 434 U.S. 220, 232 (1977).

The Court of Appeals for the Third Circuit has explained that the

> <u>Simmons/Stovall</u> inquiry is essentially two-pronged.
> The first question is whether the initial
> identification procedure was "unnecessarily" or
> "impermissibly" suggestive.  This inquiry actually
> contains two component parts: "that concerning the
> suggestiveness of the identification, and that
> concerning <u>whether there was some good reason for the
> failure to resort to less suggestive procedures</u>."  If a
> procedure is found to have been unnecessarily
> suggestive, the next question is whether the procedure
> was so "conducive to ... mistaken identification" or
> gave rise to such a "substantial likelihood of ...
> misidentification" that admitting the identification
> would be a denial of due process.

<u>United States v. Stevens</u>, 935 F.2d 1380, 1389 (3d Cir. 1991) (citations omitted) (emphasis added by Third Circuit).

Here, there is no basis for Page's contention that Johnson's identification of Page from a photo array line-up was impermissibly suggestive.  Johnson testified that she had given a description of the person who robbed the store to a composite artist, and she later examined photographs in a photo array.  She was able to positively identify Page from the photo array as the person who robbed the store.  The detective who showed Johnson

15

the photo array also testified.  Detective Michael Laine of the South Plainfield Police Department testified that the photo array was made up by the Middlesex County Sheriff's Department Identification Bureau, and that the photographs were based on the race and description provided by Johnson.

Thus, this Court finds no impermissible circumstances of suggestion by the photo array identification conducted by Detective Laine; and hence, no likelihood of an "irreparable misidentification." Simmons, 390 U.S. at 383-84.  Further, Page has failed to present any competent evidence of suggestibility in this identification procedure whatsoever.  Without any indicia of suggestiveness in the photo array, the photographic identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.  Accordingly, petitioner's claim is baseless and will be denied for lack of merit.

2.  *The Show-Up Identification*

Page also contends that the show-up identification was impermissibly suggestive so as to result in the substantial likelihood of misidentification.  The three-time victim Schechter made a positive identification of Page immediately after the third robbery.  The police had taken Schechter in a police car and drove through the neighborhood until Schechter identified Page standing outside a nearby apartment complex.  Schechter

16

identified Page by his physical features as well as by his
clothing and the distinctive shoes Page had been wearing at the
time of the robbery fifteen minutes earlier.  However, Page had
already been apprehended by the police when Schechter made the
identification. Schechter testified that he did not know Page had
been apprehended, although he did state that he had heard sirens
and saw a motorcycle officer.  One of the officers who drove
Schechter to the scene of the show-up testified that there were
two or three police cars and officers at the scene.  Another
officer stated that Page was in custody and had already been
placed in a police car when Schechter arrived.  Page contends
this information was never provided at the <u>Wade</u>[2] hearing.[3]

Respondents counter that "[o]n-the-scene showups have the
stamp of approval everywhere, including this Circuit," citing
<u>United States v. Gaines</u>, 450 F.2d 186 (3d Cir. 1971), <u>cert</u>.
<u>denied</u>, 405 U.S. 927 (1972).  In this particular case, the
respondents contend that the trial court would not have excluded
the identification because Schechter was with the police officers
shortly after the robbery and Page's apprehension, and because

---

[2]   <u>United States v. Wade</u>, 388 U.S. 218 (1967).

[3]   This issue was raised by Page in his PCR petition.  On
appeal, the Appellate Division found that all of Page's
"contentions are without merit do not warrant extended discussion
in a written opinion."  The court also found that this claim was
barred by N.J.Ct.R. 3:22-4, as it was an argument that could have
been raised on direct appeal.

17

Schechter made the identification after having been robbed three times by Page, "thus increasing the likelihood that Schechter correctly identified petitioner."  (Resp. Letter Brief at pp. 6-7).

An "on-scene" or "show-up" identification is typically one in which the suspect is apprehended at or near the scene and is returned to it immediately where the victim/witnesses may make an identification.  In Neil v. Biggers, 409 U.S. 188 (1972), the Supreme Court held that to violate due process an identification must be unnecessarily suggestive and create a substantial risk of misidentification.  409 U.S. at 196.  Although show-ups are generally considered more suggestive than line-ups, see Stovall, 388 U.S. at 302, a number of Circuit courts, including the Third Circuit, have held that show-ups are justifiable under certain circumstances:

> "Immediate show-ups can serve ... important interests.  For example, show-ups allow identification before the suspect has altered his appearance and while the witness' memory is fresh." ...  In our view, such considerations will justify a show-up in a limited number of circumstances, such as where the police apprehend a person immediately after the crime and in close proximity to the scene.

United States v. Funches, 84 F.3d 249, 254 (7th Cir. 1996)(citing U.S. v. Sleet, 54 F.3d 303 (7th Cir. 1995).  See also U.S. v. Watson, 76 F.3d 4, 6 (1st Cir.), cert. denied, 517 U.S. 1239 (1996); Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987); Gaines, 450 F.2d at 197 (where the Third Circuit held that a

18

show-up conducted without counsel was justified by "the fact that the eye-witnesses might have quickly departed, and the considerations of reliability inhering in an immediate identification").

A "suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability," for reliability is the "linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite, 432 U.S. at 106.  In order to judge whether there was a substantial likelihood of misidentification, the court must look at the reliability of the identification in light of the "totality of the circumstances." Government of Virgin Islands v. Riley, 973 F.2d 224, 228 (3d Cir. 1992).  The court should consider factors such as the witness' original opportunity to observe the suspect, the degree of attention during the initial observation, the accuracy of the initial description, the witness' degree of certainty when viewing the suspect at the confrontation, and the elapsed time between the crime and the apprehension/identification.  Neil v. Biggers, 409 U.S. at 199-200.

Applying the Biggers factors, this Court concludes that the show-up identification in this case was reliable.  First, Page was identified by Schechter, an eyewitness and victim, who had been robbed by Page on three occasions.  During each of these

19

robberies, Schechter had ample time and opportunity to view Page as Page was close in proximity to his victim.  Second, Schechter was able to provide an accurate description of Page to the police, which allowed the police to promptly apprehend him. Third, Page was apprehended by the police shortly after the robbery and near the vicinity of the robbery.  Finally, Schechter was able to identify petitioner not only from the physical description he provided, but also by the clothing and distinctive shoes petitioner wore at the time of the robbery only minutes beforehand.

In light of all these factors, this Court finds that the show-up identification used by the police in this case was not so inherently unfair or impermissibly suggestive as to create a substantial likelihood of irreparable misidentification.  There were sufficient aspects of reliability to ensure that the petitioner was correctly identified.  Moreover, if there was any doubt as to the reliability, it was dispelled by the positive identification made by Johnson, who likewise had been robbed by petitioner and to whom petitioner had boasted that he robbed Schechter.  Therefore, this claim for habeas relief will be denied for lack of merit.

C.  Prosecutorial Misconduct

In his third claim, Page asserts prosecutorial misconduct with respect to the prosecutor's statement to the trial court

that he had sent a video tape of the third robbery over to Perth
Amboy Video Enterprises to see if they could get a clear shot of
the face of the perpetrator.  However, there was no clear view of
the person who was the robber.  Page complains that he was denied
the very same opportunity to have the tape enhanced to show that
the robber was not petitioner.  Sections of the tape were shown
to the jury by the prosecutor, but these sections showed no clear
view of the robber for identification.  Page contends that the
same rules that applied to him should have applied to the
prosecutor.  The Court is hard-pressed to find any misconduct by
the prosecutor based on Page's allegations as set forth here.

     Habeas review of a claim based on prosecutorial misconduct
is limited to determining whether the conduct "so infected the
trial with unfairness as to make the resulting conviction a
denial of due process."  Donnelly v. DeChristoforo, 416 U.S. 637,
643 (1974).  "The touchstone of due process analysis in cases of
alleged prosecutorial misconduct is the fairness of the trial,
not the culpability of the prosecutor."  Smith v. Phillips, 455
U.S. 209, 219 (1982).  If it does not infect the entire trial,
misconduct alone is not enough to warrant a new trial.  Id. at
220.  "A criminal conviction is not to be lightly overturned on
the basis of a prosecutor's comments [or conduct] standing alone,
for the statements or conduct must be viewed in context."  United
States v. Young, 470 U.S. 1, 11 (1985).

21

However, the U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ... Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone.  Prosecutors sometime breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence."  Young, 470 U.S. at 7.

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

Id. at 18.

Thus, where this prosecutor's conduct during trial is challenged in habeas, "[t]he relevant question is whether the

prosecutor's [conduct] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (quoting Donnelly, supra). "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, there was no state court finding that the prosecutor's conduct in showing portions of the tape to the jury was improper, or personal, or that it unfairly prejudiced petitioner so as to make the resulting conviction a denial of due process. Page was identified by his victims and the fact of the tape would not have unduly prejudiced petitioner in light of the other strong identification evidence against him. Moreover, the tape was unclear and did not serve to show Page as the person who robbed the store. The prosecutor merely acknowledged that the tape could not be enhanced for a clear identification. This comment was not harmful to the petitioner. Accordingly, this ground for habeas relief is without any merit and will be denied.

D.   Tainted Evidence Presented to Jury

This claim was asserted in conjunction with the prosecutorial misconduct claim as it involves the showing of the

23

video tape to the jury.  Page contends that the tape should not have been shown to the jury.

Federal courts must afford the states deference in its determinations regarding evidence and procedure.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986)("we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted").  It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial." Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir. 1994), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted). The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). An error is not harmless if "it aborts the basic trial process or denies it altogether." Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

This Court finds that the showing of the tape was not an error of constitutional dimension and there is no demonstration by petitioner that the trial process was fundamentally unfair. Moreover, even if the trial court was wrong to allow the tape to be shown, the tape did not show a clear picture of the robber. The showing cannot be considered prejudicial or harmful for two reasons. First, it did not identify petitioner, and second, there was eyewitness testimony by the victims themselves that provided strong direct evidence that Page was the perpetrator of

the charged crimes, regardless of the video tape.  Accordingly,
this ground for a writ of habeas corpus will be denied.

E.   <u>The Trial Court Erred in Failing to Sever Counts</u>

Page next argues that Counts 7, 8, and 9 of the indictment
should have been severed and tried separately.  These counts
involved the robbery on February 21, 1992 at the Auto Partsland
store in South Plainfield, New Jersey.  The trial court allowed
the counts to remain because of the statement made to Johnson by
the robber, that he had robbed the American Electronics Co. Store
in Piscataway.

The Court finds that the state court's ruling, which denied
severance, was based solely on state law and state rules of
procedure and evidence.  Generally, matters of state procedural
law are not reviewable in a federal habeas petition.  The Supreme
Court has stated that "it is not the province of a federal habeas
court to reexamine state-court determinations on state-law
questions."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  This
is generally true even where the state court incorrectly applied
state law.  <u>Id</u>. at 71.  Rather, a federal habeas claim will lie
only where a state court determination violated some federally
protected right.  <u>Id</u>. at 68.  The Third Circuit likewise stated:

> Our review of a federal habeas corpus petition is limited to
> remedying deprivations of a petitioner's federal
> constitutional rights.  We can take no cognizance of non-
> constitutional harm to the defendant flowing from a state's
> violation of its own procedural rule, even if that rule is

intended as a guide to implement a federal constitutional guarantee.

Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991), cert. denied, 505 U.S. 1223 (1992); see also Smith v. Zimmerman, 768 F.2d 69, 73 (3d Cir. 1985)("a 'mere error of state law' is not a denial of due process").

Here, it is plain that Page was not denied due process or other federally protected right.  A trial judge has ample discretion under R. 3:15-2 to order separate trials on counts of an indictment if a party is prejudiced by their joinder.  A trial court facing this issue of whether joinder of counts is prejudicial must consider "'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under Evid.R. 55 [N.J.R.E. 404(b)][4] in the trial of the remaining charges.'" State v. Oliver, 133 N.J. 141, 151 (1993)(quoting State v. Pitts, 116 N.J. 580, 601-02 (1989)). Here, it appears that the trial court correctly applied state law and rules of evidence in determining that Page was not prejudiced by the joinder of the counts involving the auto parts store

---

[4]  Evid. R. 55 (N.J.R.E. 404(b)) states that:

> evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit a crime or civil wrong as the basis for an inference that he committed a crime or civil wrong on another specified occasion but ... such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident.

robbery, because these offenses would have been admissible in a trial of the other robbery charges under Evid. R. 55 (N.J.R.E. 404(b)) on the issue of identity.

Therefore, Page has failed to establish any due process violation in the trial court's denial of his motion for severance and he is not entitled to federal habeas relief on this ground.

F.   Ineffective Assistance of Trial Counsel

In his sixth claim, Page asserts that his counsel was ineffective by (1) failing to attack the indictment; (2) failing to attack or present Johnson's statement and police report which allegedly denied that the two robbers were the same; (3) failing to convince trial court to allow enhancement of the video tape; and (4) failing to investigate possible witnesses for the defense.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102(3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973

28

(2001).  Counsel's errors must have been "so serious as to
deprive the defendant of a fair trial, a trial whose result is
reliable."  <u>Strickland</u>, 466 U.S. at 688.  "In any case presenting
an ineffectiveness claim, the performance inquiry must be whether
counsel's assistance was reasonable considering all the
circumstances."  <u>Id.</u>  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

<u>Id.</u> at 689 (citations omitted); <u>see</u> <u>also</u> <u>Virgin Islands v.
Wheatherwax</u>, 77 F.3d 1425, 1431 (3d Cir.), <u>cert.</u> <u>denied</u>, 519 U.S.
1020 (1996).

If able to demonstrate deficient performance by counsel,
petitioner must also show that counsel's substandard performance
actually prejudiced his defense.  <u>Strickland</u>, 466 U.S. at 687.
Prejudice is shown if "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim. Id. at 697. See also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

1. *Failure to Attack the Indictment*

Page contends that trial counsel was ineffective for failing to attack the indictment.  As demonstrated in Section V.A above, Page's claim that the indictment was defective based on hearsay testimony of police officers is completely without merit.  Thus, a motion to quash the indictment in this instance would have been meritless and counsel is not obligated to raise meritless motions.

Counsel's failure to file motions does not per se constitute ineffective assistance of counsel. See Kimmelman v. Morrison, 477 U.S. 365, 383-84 (1986); Jelinek v. Costello, 247 F. Supp.2d 212 (E.D.N.Y. 2003).  Rather, a determination of ineffectiveness depends on whether the motion or objection would have been granted or sustained had it been made. United States v. Oakley, 827 F.2d 1023, 1025 (5th Cir. 1987).  Thus, "[c]ounsel cannot be faulted for failing to pursue  meritless or futile objections."

30

Johnston v. Love, 940 F. Supp. 738, 776 (E.D. Pa. 1996), aff'd
118 F.3d 1576 (3d Cir.), cert. denied, 522 U.S. 972 (1997); see
also Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir.),
cert. denied, 513 U.S. 1022 (1994)(failure to raise non-
meritorious issues does not constitute ineffective assistance of
counsel).  Moreover, the filing of pretrial motions "falls
squarely within the ambit of trial strategy."  Murray v. Maggio,
736 F.2d 279, 283 (5th Cir. 1984), and Page has alleged no facts
that would overcome the presumption that counsel's decision in
this regard was strategic.  Strickland, 466 U.S. at 689.
Therefore, Page's ineffective counsel claim fails under the first
prong of Strickland, and this claim will be denied.

   2.  *Failure to Attack Johnson's Identification*

   Next, Page alleges that his counsel should have attacked
Johnson's identification of him based on her earlier statement
and report to police that the two robbers were not the same.
Page's characterization of Johnson's first identification is
misinformed.  Johnson was shown a composite sketch of the robber
in the American Electronic store robberies, which she was unable
to positively identify as the robber in her store.  However, when
shown a photo array that included Page's photograph, she
positively identified Page as the robber.

   Decisions by trial counsel with regard to examination of
witnesses are strategic by nature and necessitate a strong level

of deference to the attorney's assessment.  See Diggs v. Owens, 833 F.2d 439, 444-45 (3d Cir. 1987), cert. denied, 485 U.S. 979 (1988).  Here, it would appear that counsel's decision not to cross-examine Johnson on her first failed identification from a composite sketch was a strategic decision.  Johnson's positive identification of Page from a photo array was strong direct evidence.  Counsel likely determined that an extensive cross-examination would have unduly highlighted the strength of her recollection and identification of Page.  Thus, there is no deficient performance when counsel's decision was a tactical choice.  This claim will be denied for lack of merit.

3.  *Enhancement of the Video Tape Motion*

Page also contends that his counsel was ineffective for failing to win his motion to have the video tape enhanced so as to prove the perpetrator on the tape was not Page.  This claim is completely baseless.  Trial counsel made the motion and it was denied.  Counsel's performance was not deficient merely because he was unsuccessful.

Moreover, as discussed in Section V.C above, enhancement of the tape was attempted but unattainable by the prosecutor.  Therefore, the Court finds this claim by petitioner to be without substantive merit and the claim will be denied.

4. *Failure to Investigate Possible Witnesses*

Here, Page asserts that his counsel was ineffective for failing to locate and call witnesses to dispute the reliability of Schechter's identification of Page.  In particular, Page contends that his girlfriend and her mother would have testified that Page had been inside Schechter's store on several occasions before the robbery, and thus, the identification of Page when he was in custody was based simply on familiarity.  On appeal from denial of the state PCR motion, the Appellate Division found this claim of ineffective assistance of trial counsel to be without merit.  "We see no reasonable likelihood that these alleged deficiencies at trial could have affected the jury's verdict." (Superior Court of New Jersey, Appellate Division, per curiam Opinion, dated October 31, 2001, at pg. 4).

As discussed earlier, Schechter's identification was made after he had been robbed by petitioner three times.  It was also bolstered by Johnson's independent and positive identification of Page in a photo line-up.  Further, Schechter's identification was based on the clothing and shoes worn by Page at the time of the identification and at the time of the robbery only 15 minutes earlier.  Thus, this Court finds that the testimony of Page's girlfriend and her mother would not have had any impact or effect on the jury's verdict.  Counsel's failure to call these witnesses was neither deficient or prejudicial.

This Court finds nothing to indicate that the state court decision (which concluded there was no error, and hence, no ineffective assistance of counsel) was based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor were the decisions contrary to established federal law.  The state court expressly found that the alleged deficiencies would not have affected the jury's verdict.  Page has not demonstrated that the state court decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Accordingly, this claim of ineffective assistance of counsel is without merit.

G.   <u>The Trial Court Erred in Denying the Defense Motion to Have</u>
     <u>the Video Tape Enhanced and in Allowing the Video Tape to be</u>
     <u>Shown to the Jury (Points VII and VIII)</u>

Petitioner's claim that the trial court erred in allowing the tape to be shown to the jury was discussed and rejected by this Court in Section V.D, at pages 23-25, <u>supra</u>.  The claim is plainly without merit and not subject to federal habeas review.

As to the contention that the court erred in denying the defense motion to have the tape clarified, this claim was also discussed and rejected.  <u>See</u> this Opinion, <u>supra</u>, at page 32.  The trial court's decision was a matter of state evidentiary and procedural law not subject to federal habeas review.  Moreover, even if the court's decision was wrong, it was harmless.

34

Enhancement or clarification of the tape was attempted but
unattainable by the prosecutor.   Therefore, these claims by
petitioner are without any substantive merit and will be denied.

H.   The Trial Court Abused Its Discretion by Sentencing
     Petitioner Separately on Count Seven

     Petitioner argues that he should not have been sentenced
separately on Count Seven (first degree armed robbery at the auto
parts store) after the court refused to sever this claim from
trial.

     Sentencing is generally considered a matter of state
criminal procedure, which does not fall within the purview of
federal habeas review.   Ervin v. Beyer, 716 F. Supp. 163, 165
(D.N.J. 1989); see also Johnson v. Beto, 383 F.2d 197, 198 (5th
Cir. 1967), cert. denied, 393 U.S. 868 (1968); U.S. ex rel.
Jackson v. Meyers, supra.   Indeed, absent some constitutional
violation, federal courts cannot review a state's alleged failure
to adhere to its own sentencing procedure.   Rorie v. Beard,
Civ.A.No. 04-3380, 2005 WL 825917, *5 (E.D. Pa. April 7,
2005)(citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir.
1988)).   Thus, a federal court will not reevaluate a sentence in
a habeas proceeding unless it exceeds the statutory limits.
Jones v. Superintendent of Rahway State Prison, 725 F.2d 40 (3d
Cir. 1984); see also Williams v. Duckworth, 738 F.2d 828, 831
(7th Cir. 1984), cert. denied, 469 U.S. 1229 (1985)("As a general
rule, federal courts will not review state sentencing

35

determinations that fall within statutory limits."); Bonner v.
Henderson, 517 F.2d 135, 136 (5th Cir. 1975)("This Court will not
upset the terms of a sentence within statutory limits unless so
disproportionate to the offense as to be completely arbitrary and
shocking").

Here, petitioner has not alleged that his sentence violates
any federal constitutional rights.  Moreover, Page's sentence
does not exceed the statutory limits.  Page merely argues that he
should not have been sentenced separately on this count when it
was not severed from the indictment.  This claim is completely
baseless.  Consequently, Point IX of the petition is not subject
to federal review and will be denied.

I.   <u>Ineffective Assistance of Appellate Counsel</u>

Page also broadly asserts that his appellate counsel was
ineffective for failing to raise most of the above cited issues
on direct appeal.  Several of these claims were raised in Page's
state PCR proceedings but were denied.

On appeal from denial of the PCR petition, the Appellate
Division found:

> As to ineffective assistance of appellate counsel, defendant
> alleges failure to raise trial counsel's performance,
> failure to argue the suggestiveness identification issue,
> failure to return defendant's phone calls, and failure to
> argue an excessive sentence.  We are satisfied based on the
> record that none of these alleged failures had any
> reasonable potential for affecting the outcome of the
> appeal.

(Superior Court of New Jersey, Appellate Division, per curiam opinion, filed on October 31, 2001, at pg. 4).

Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard previously discussed. See Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004).  In order to prevail on a claim that appellate counsel was ineffective, Page must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

Here, Page has failed to show that the performance of his appellate counsel was deficient and that he was prejudiced thereby, and in light of the evaluation of this issue by the state court, this Court cannot conclude that the determination of this issue resulted in a decision that was contrary to, or involved an unreasonable application or determination of law or fact.  Williams v. Taylor, supra.  Moreover, for those claims not raised in the PCR proceedings, this Court has found said claims to be without substantive merit.  Thus, there is no reasonable probability that Page's conviction would have been affected had these claims been raised on direct appeal.  Accordingly, the Court will deny relief on this claim.

VI.   <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Page demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## **CONCLUSION**

For the foregoing reasons, this Court finds that Page's § 2254 habeas petition should be denied on the merits.  A certificate of appealability will not issue.  An appropriate Order accompanies this Opinion.


        /s/ Dickinson R. Debevoise
_____  DICKINSON R. DEBEVOISE
        United States District Judge


DATED: October 18, 2005

38